UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

XAVIER E. RAMIREZEMPUNO,

    Petitioner,

v.

UNITED STATES PAROLE
COMMISSION,

    Respondent.

Civ. No. 17-5792 (RBK)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

## I.    INTRODUCTION

Petitioner Xavier E. Ramirezempuno ("Petitioner"), is a military prisoner currently incarcerated at FCI Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner alleges that the United States Parole Commission ("USPC" or the "Commission") violated his constitutional rights by applying the federal parole guidelines rather than the military's parole guidelines to his case. The petition is ripe for disposition. For the reasons outlined below, the petition will be denied.

## II.    BACKGROUND

Petitioner is a former active duty member of the United States Marine Corps. On January 18, 2013, Petitioner was convicted by a Navy general court-martial of: (1) three specifications[1] of failure to obey a lawful general regulation in violation of Article 92, Uniform Code of Military

---

[1] "A specification is a plain, concise, and definite statement of the essential facts constituting the offense charged. A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication. No particular format is required." Rules for Courts-Martial (R.C.M.) 307(c)(3), Manual for Courts-Martial, II–28, 29 (2000 ed.). Each specification "[s]tates only one offense" and "[c]harges and specifications alleging all known offenses by an accused" may be brought at one time. R.C.M. 307(c)(4), Manual for Courts-Martial, II–29.

Justice ("UCMJ"), 10 U.S.C. § 892; (2) two specifications of aggravated sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920; (3) one specification of assault by battery in violation of Article 128, UCMJ, 10 U.S.C. § 928; (4) one specification of adultery in violation of Article 134, UCMJ, 10 U.S.C. § 934; and (5) one specification of obstruction of justice in violation of Article 134, UCMJ, 10 U.S.C. § 934. (*See* ECF No. 4, Ex. 1, at pp. 1-3). Petitioner was sentenced to eight years of confinement and a dishonorable discharge on May 6, 2013. (*See* ECF No. 1, Ex. 1. at p. 12).

On January 23, 2015, the Navy Clemency and Parole Board ("NC&PB") reviewed Petitioner's case for parole. (*See* ECF No. 4, Ex. 6 at pp. 1-2). The NC&PB rated Petitioner's offense severity as a Category Six and assigned Petitioner a salient factor score of 9 points. (*See id.*). Based on the offense severity and salient factor score, the NC&PB denied Petitioner parole and determined his customary range of time served in confinement before release on parole to be 40-52 months. (*See id.* at p. 2). Petitioner received notice on March 11, 2015 that the NC&PB denied his parole. (*See* ECF No. 4, Ex. 5, at p. 1). On June 10, 2015, the Navy Council of Review Boards denied Petitioner's appeal of the NC&PB's decision to deny parole. (*See* ECF No. 4, Ex. 7, at p. 1). On September 2, 2015, the NC&PB reviewed Petitioner's case and denied clemency. (*See* ECF No. 4, Ex. 8, at p. 1).

On March 8, 2016, Petitioner was transferred from military custody to federal custody at FCI Fort Dix in New Jersey. (*See* ECF No. 4, Ex. 3, at p. 1). On January 9, 2017, the USPC conducted an initial parole determination hearing. (*See* ECF No. 4, Ex. 9, at p. 1). At the hearing, the USPC assigned Petitioner a salient factor score of 9 points, and rated his offense severity as Category Seven because it involved forcible sodomy. (*See id.*). This combination of salient factor

score and offense severity category yielded a parole guideline range of 52-80 months.[2] (*See id.* at pp. 1-2). The USPC found that departure from the guidelines range was not warranted and denied parole. (*See id.* at p. 1). The USPC notified Petitioner of this decision by notice of action dated January 26, 2017. (*See id.*).

On administrative appeal, the National Appeals Board affirmed the USPC's decision on June 19, 2017. (*See* ECF No. 4, Ex. 10). The Board explained that under Chapter 2, Subchapter D, No. 231 of the USPC's Offense Behavior Severity Index, 28 C.F.R. § 2.20, rape or forcible sodomy is rated as a Category Seven offense unless the offense involved a prior consensual sexual relationship. (*See id.*). Because Petitioner was convicted under Article 120, which requires a nonconsensual sexual act, the Board found Petitioner's offense was properly rated as a Category Seven. (*See id.*). Additionally, the Board explained that Article 120 convictions are punishable by up to 30 years, which would be rated as a Category Seven offense under the miscellaneous offense rule in Chapter 12 of the USPC's Offense Behavior Severity Index. (*See id.*). Further, the Board found that even if Petitioner's offense had been rated as a Category Six, it involved aggravating factors[3] that would justify a decision above the guidelines. (*See id.*).

On August 7, 2017, Petitioner filed a habeas corpus petition pursuant to 28 U.S.C. § 2241, alleging that the USPC erred in applying its parole guidelines rather than the military's guidelines to his case. (*See* ECF No. 1, at pp. 6-7). Additionally, Petitioner claims that the USPC is violating his constitutional rights as well as the Ex Post Facto Clause in applying the federal parole rules,

---

[2] *See* 28 C.F.R. § 2.20, Guidelines for Decisionmaking.
[3] Specifically, Petitioner's offense involved three separate victims and Petitioner took advantage of his position as a recruiter to commit the offenses. (*See* ECF No. 4, Ex. 10).

3

rather than the military parole regulations. (*See id.* at pp. 7-8). The petition[4] has been fully briefed and is ripe for review.

## III. LEGAL STANDARD

Federal district courts can entertain petitions for writs of habeas corpus, pursuant to 28 U.S.C. § 2241, filed by prisoners incarcerated by order of a military court-martial. *See Burns v. Wilson*, 346 U.S. 137, 139 (1953). A § 2241 petitioner may seek judicial review of the execution of his sentence by filing a petition for a writ of habeas corpus in the district court with jurisdiction over the facility in which he is confined. He will succeed if he demonstrates that he is confined in violation of the Constitution or laws of the United States. *See* 28 U.S.C. § 2241(c)(3); *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). A § 2241 petition should name as respondent "the person who has custody over [the prisoner]."[5] 28 U.S.C. § 2242.

## IV. DISCUSSION

Petitioner's habeas petition raises the following claims: (1) the USPC erred in categorizing his offense as a Category Seven under the federal parole guidelines; (2) the USPC's application of its parole guidelines violated his right to equal protection under the Fifth Amendment; (3) the USPC's application of its parole guidelines violated his right to due process; (4) the USPC's application of its parole guidelines violated the Ex Post Facto Clause; and (5) the USPC improperly

---

[4] On May 10, 2018, Petitioner submitted a letter requesting leave to amend the petition to assert a claim for monetary compensation. (*See* ECF No. 12). For the reasons expressed in this opinion, Petitioner's request is denied.

[5] Although Petitioner improperly named the USPC as the sole respondent in his Petition, he acknowledges that the Warden at FCI Fort Dix, the federal facility where he is presently in custody, should be the proper respondent. (*See* ECF No. 6, at p. 1).

categorized his conviction of aggravated sexual contact under Article 120 of the UCMJ as forcible sodomy under the USPC guidelines. (*See* ECF No. 1 at pp. 6-8).

### A. Claims of USPC Error

Petitioner contends that the USPC erred by applying its parole guidelines to his case and by categorizing Petitioner's offense as a Category Seven rather than a Category Six. (*See* ECF No. 1 at pp. 6-7). Petitioner also claims that the USPC improperly categorized one of his convictions as amounting to forcible sodomy under USPC guidelines. (*See id.* at p. 8).

#### 1. Application of USPC Guidelines

Pursuant to 10 U.S.C. § 858(a), a sentence adjudicated by military court-martial "may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States." Moreover, "[p]ersons so confined in a penal or correctional institution not under the control of one of the armed forces are *subject to the same discipline and treatment* as persons confined or committed by the courts of the United States or of the State, District of Columbia, or place in which the institution is situated." 10 U.S.C. § 858(a) (emphasis added).

Federal courts have interpreted this language to mean that military prisoners confined in federal prison facilities are subject to the Federal Bureau of Prisons' ("BOP") rules, including the rules concerning parole consideration. *See Artis v. U.S. Dep't of Justice*, 166 F. Supp. 2d 126, 130 (D.N.J. 2001) ("Military prisoners who are confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons sentenced by the Courts of the United States."); *Stewart v. U.S. Bd. of Parole*, 285 F.2d 421, 421-22 (10th Cir. 1960), *cert. denied*, 365 U.S. 862 (1961) ("It has been consistently held that a military prisoner who is committed to the service of his sentence in a federal penitentiary 'automatically

becomes entitled to any advantages and subject to any disadvantages which accrue to the civilian prisoner.'") (citing *Fitch v. Hiatt*, 48 F. Supp. 388, 390 (M.D. Pa. 1942)); *Hirsch v. Secretary of Army*, No. 98-1468, 1999 WL 110549, at *1 (10th Cir. Mar. 2, 1999) ("[T]he plain language of 10 U.S.C. § 858(a) reflects Congress['s] intent that [the petitioner] and other military prisoners like him who have been transferred to federal custody be subject to the federal laws and regulations governing any other federal prisoner, *including federal parole provisions*." (emphasis in original) (internal citations omitted)). Thus to the extent that Petitioner is claiming that the USPC should have applied military law to his parole determination, Petitioner cannot show that the USPC acted outside its statutory authority by applying BOP parole regulations.

### 2. The USPC's Offense Categorization and Severity Rating

The function of judicial review on a petition for writ of habeas corpus in the parole context is to determine whether the parole commission abused its discretion. *See Furnari v. Warden*, 218 F.3d 250, 254 (3d Cir. 2000). Review is limited to whether there is a rational basis in the record for the conclusions embodied in the parole commission's statement of reasons, which should include whether the appropriate criteria, rational and consistent with its enabling statutes, has been followed so that its decision is not arbitrary and capricious, nor based on impermissible considerations. *Id.* (citing *Zannino v. Arnold*, 531 F.2d 687, 690-91 (3d Cir. 1976)). The district court is not empowered to substitute its judgment for that of the parole commission unless the commission's exercise of discretion represents an egregious departure from rational decision-making. *See Butler v. U.S. Parole Commission*, 570 F. Supp. 67, 77 (M.D. Pa. 1983).

The USPC's guidelines utilize "a grid in which a combination of salient factor score and offense severity rating identifies a 'customary' time span to be served." *Geraghty v. United States Parole Comm'n*, 579 F.2d 238, 242 (3d Cir. 1978); *see also Jones v. Zickafoose*, No. 15-0465,

2018 WL 347773, at *3 (M.D. Pa. Jan. 10, 2018). Under the guidelines, each parole determination is based upon two factors: an offense category and a salient factor score. The offense category rates the severity of the inmate's offenses according to an index of federal crimes, although the Commission may use a different category in cases of "especially mitigating or aggravating circumstances." 28 C.F.R. § 2.20(d). "If an offense behavior is not listed [in the index of federal crimes], the proper category may be obtained by comparing the severity of the offense behavior with those of similar offense behaviors listed in [the index]." 28 C.F.R. § 2.20, Chp. 12. The salient factor score purports to predict whether a prisoner will violate parole based upon facts such as the number of prior convictions, age, and probation status at the time of the offense. *See* 28 C.F.R. § 2.20(e). Once the Commission selects the appropriate offense category and salient factor score, it must then cross-reference these scores on a grid to determine a recommended range of parole release dates. *See* 28 C.F.R. § 2.20, Guidelines for Decisionmaking.

Here, the USPC had a rational basis to rate the severity of Petitioner's underlying offense as a Category Seven. According to General Court-Martial Order No. R13-09, Petitioner was convicted of eight separate offenses involving three different victims, including aggravated sexual contact. (See ECF No. 4, Ex. 2, at p. 2). The second specification of Petitioner's aggravated sexual contact offense[6] charged Petitioner with "licking the [victim's] vaginal area with [Petitioner's] tongue, by using enough strength sufficient that she could not avoid or escape the sexual conduct." (*See id.*).

---

[6] Article 120 defines "aggravated sexual contact" as "commit[ting] or caus[ing] sexual contact upon … another person, if to do so would violate subsection (a) (rape) had the sexual contact been a sexual act." 10 U.S.C.A. § 920(c). As applied to Petitioner's offense, "sexual contact" is defined as "touching … either directly or through the clothing, the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, with an intent to abuse, humiliate, or degrade any person." 10 U.S.C.A. § 920(g)(2)(A).

Because the offense of aggravated sexual contact is not listed in the USPC's index of federal offenses, the USPC was authorized to compare the severity of the offense behavior with similar offense behaviors listed in the index. *See* 28 C.F.R. § 2.20, Chp. 12. The USPC determined the behavior described in the second specification of Petitioner's aggravated sexual contact offense to be most like forcible sodomy,[7] which is rated as a Category Seven. *See* 28 C.F.R. § 2.20, Chp. 2, Sub. Chp. D, No. 231. Contrary to Petitioner's contention, a prisoner need not be convicted of a violation to warrant the USPC's assignment of that category for severity purposes under the parole guidelines. *See* 28 C.F.R. § 2.20, Chp. 12. Thus, there was a rational basis in the record for the USPC to categorize Petitioner's offense behavior as forcible sodomy, which is a Category Seven offense.

Moreover, even if Petitioner's offense behavior constituted a Category Six offense, as Petitioner contends, the USPC had authority to go above and beyond the guidelines in determining Petitioner's release. The Commission is not limited by the parole guidelines as Congress expressly "authorizes parole decisions outside of the guidelines where 'good cause' is determined to exist." *Campbell v. United States Parole Comm'n*, 704 F.2d 106, 111 (3d Cir. 1983) (citing 18 U.S.C. § 4206(c)); *see also Wade v. Warden*, No. 15-8925, 2016 WL 6465419, at *4 (D.N.J. Oct. 31, 2016). Moreover, the guidelines themselves provide that "[t]hese time ranges are merely guidelines. Where the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered." 28 C.F.R. § 2.20(c). Aggravating circumstances may warrant a decision above the guidelines; mitigating circumstances may warrant a decision below the guidelines. 28 C.F.R. § 2.20(d). Given the totality of Petitioner's confining offenses and the fact that they

---

[7] Article 125 defines "forcible sodomy" as "unnatural carnal copulation with another person of the same or opposite sex by unlawful force or without the consent of the other person." 10 U.S.C.A. § 925.

8

involved multiple victims, the USPC had good cause to depart from the guidelines. *See Harris v. Martin*, 792 F.2d 52, 55 (3d Cir. 1986) (finding that the Commission's reliance on the quantity of drugs involved in the conviction as its basis for departing from the parole guidelines was permissible); *Muhammad v. Mendez*, 200 F. Supp.2d 466, 472 n.6 (M.D. Pa. 2002) (explaining that the Commission is permitted to consider the nature and circumstances of a petitioner's prior and confining offenses in determining parole). Accordingly, Petitioner's claim that the USPC improperly determined his offense severity rating is without merit and shall be denied.

### B. Constitutional Claims

#### 1. Equal Protection

Petitioner contends that the USPC violated his Fifth Amendment equal protection rights. (*See* ECF No. 1, at p. 7). Specifically, Petitioner argues that the USPC's application of the federal parole guidelines to his case denied him the same parole treatment provided to military prisoners who are not transferred to a BOP institution. (*See id.*). Petitioner's contention is without merit.

The Due Process Clause of the Fifth Amendment, which is applicable to the federal government, has been interpreted to include an "implied equal protection guarantee." *FCC v. Beach Commc'ns*, 508 U.S. 307, 312 (1993). "Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 316-17 (3d Cir. 2001) (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995)). The Equal Protection Clause of the Fourteenth Amendment requires state actors to treat all persons similarly situated in the same manner. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000). Thus to bring a claim for a denial of equal protection, a petitioner

must prove that he "received different treatment from that received by other individuals similarly situated." *Andrews v. City of Phila.*, 895 F.2d 1469, 1477 (3d Cir. 1990).

Although the Third Circuit has not spoken to the exact issue presented in this case, this district has previously denied a similar equal protection claim brought by a military prisoner transferred to a federal prison pursuant to 10 U.S.C. § 858(a). In *Fell v. Olson*, No. 99-926, 2000 WL 122519, at *1 (D.N.J. Feb. 2, 2000), the petitioner filed a habeas corpus petition under § 2241 alleging violations of the Equal Protection Clause in connection with the frequency of his parole hearings following his transfer to the federal civilian prison. Specifically, the petitioner argued that the USPC violated his equal protection rights by conducting his parole hearings biannually in accordance with federal parole procedures rather than annually in accordance with military regulations. *See id.* at *2. Relying on the Tenth Circuit's decision in *Hirsch v. Secretary of the Army*, No. 98-1468, 1999 WL 110549 (10th Cir. Mar. 2, 1999), the district court found that it is well-established that military prisoners later transferred to civilian prisons are subject to normal federal prison procedures, including federal parole provisions. *See id.* at *2-3. Accordingly, the district court determined that the petitioner was not similarly situated to military prisoners that remained in military custody and denied the petitioner's equal protection claim. *See id.* at *3.

The United States Court of Appeals for the District of Columbia reached a similar conclusion in *Koyce v. United States Board of Parole*, 306 F.2d 759 (D.C. Cir. 1962). There, a military prisoner released from a federal civilian prison raised a Fifth Amendment equal protection claim regarding parole requirements imposed on him by the USPC. *See id.* at 760-61. In rejecting the prisoner's equal protection claim, the court explained:

> [Petitioner] is not being treated any differently than all persons confined as he was under the terms of 10 U.S.C. § 858(a) …. Congress has authorized such confinement of [petitioner]. He is not within a class of persons convicted by court-martial who remain

>confined under military authority. In determining whether he is being denied equal protection of the laws[,] the class to which he belongs consists of the persons confined as he was confined, subject to the same conditions to which he was subject. There is no unconstitutional discrimination or other denial of due process because of the recognition by Congress that it is desirable and feasible for persons confined in such institutions as [the United States Penitentiary in Lewisburg, Pennsylvania] to be subject to certain specified and salutary parole conditions, notwithstanding like provisions have not been deemed desirable or feasible for those who serve their sentences in a military prison ....

*Id.* at 762.

Here, the Court finds the foregoing principles to be controlling in this case. Simply stated, Petitioner has no federal right to be confined in a military correctional facility as opposed to a federal prison. *See* 10 U.S.C. § 858(a); *see also* 18 U.S.C. § 4083 ("Persons convicted of offenses against the United States or by courts-martial punishable by imprisonment for more than one year may be confined in any United States penitentiary."). Upon transfer to a federal prison, Petitioner became "subject to the same discipline and treatment as *persons committed by the courts of the United States.*" *See* 10 U.S.C. § 858(a) (emphasis added). Consequently, Petitioner is not similarly situated, for purposes of equal protection analysis, to military inmates who remain in the custody of military correctional institutions. *See Johnson v. O'Brien*, No. 09-0504, 2010 WL 2927976, at *6-7 (W.D. Va. July 23, 2010) (finding that military inmate in BOP custody, who brought equal protection challenge based on application of parole guidelines was "not similarly situated, for purposes of equal protection analysis, to military inmates who remain in the custody of military correctional institutions"); *Morrow v. Woodring*, No. 07-6876, 2008 WL 1847228, at *5 (C.D. Cal. Apr. 23, 2008) (denying equal protection claim based on application of parole guidelines where military prisoner in BOP custody could not show he was treated differently than other military inmates housed by the BOP). Accordingly, Petitioner's equal protection claim is denied.

## 2. Due Process

Petitioner also argues that the USPC violated his constitutional right to substantive due process by applying the federal parole guidelines in an arbitrary and impermissible manner. (*See* ECF No. 1, at p. 7; ECF No. 6, at p. 5). Petitioner does not contend that he has a liberty interest in parole, but rather argues that the USPC denied him parole for arbitrary or constitutionally impermissible reasons. (*See* ECF No. 6, at p. 5).

It is well-established that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). The Third Circuit has held, however, that "all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980). In the context of habeas review of a parole board decision, "[t]he relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which [has been] termed at times [as] 'conscience shocking' or 'deliberately indifferent.'" *Hunterson v. DiSabato*, 308 F.3d 236, 247 (3d Cir. 2002). Accordingly, "the requirements of substantive due process are met if there is some basis for the challenged decision." *Id.* at 246 (citing *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001)).

Here, as previously discussed, the USPC had a rational basis for its determination that Petitioner's offense involved behavior similar to forcible sodomy and should be rated as a Category Seven offense, which carries a parole guideline range of 52-80 months. The USPC is afforded wide discretion in making the necessary evaluation. *See United States v. Addonizio*, 442 U.S. 178, 189-90 (1979); *Campbell v. United States Parole Comm'n*, 704 F.2d 106, 111-12 (3d

Cir. 1983). Because the USPC had a rational basis for its parole determination, it did not abuse its discretion. Accordingly, the Court denies Petitioner's due process claim.

### 3. Ex Post Facto Clause

Petitioner further asserts a claim under the Ex Post Facto Clause of the Constitution. Specifically, Petitioner complains that the application of the federal parole regulations increased his punishment and therefore resulted in an ex post facto violation. (*See* ECF No. 1 at p. 7). For the following reasons, the Court concludes that this claim is also without merit.

The United States Constitution prohibits federal and state governments from enacting any ex post facto law. U.S. CONST. art. I, § 9, cl. 3. An ex post facto law is one which "retroactively alter[s] the definition of crimes or increase[s] the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). "To fall within the ex post facto prohibition, a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (internal citations and quotations omitted). "The critical question is whether the law changes the legal consequences of acts completed before its effective date." *Weaver v. Graham*, 450 U.S. 24, 31 (1981).

In this case, Petitioner's ex post facto argument fails for two reasons. First, there has been no retroactive application of federal law. Section 858(a) of Title 10, which authorized Petitioner's transfer to federal civilian custody, and which requires that transferred military prisoners be "subject to the same discipline and treatment" as other civilian prisoners, predates Petitioner's criminal conduct by more than fifty years. Consequently, there is no retroactive application of law involved in this case. *See Mansfield v. Beeler*, 238 F. App'x 794, 797 n.4 (3d Cir. 2007) (finding transfer of military prisoner to BOP custody did not violate Ex Post Facto Clause where statute

authorizing inmate's transfer to civilian custody, 10 U.S.C. § 858(a), predated his criminal conduct by nearly 30 years); *Artis*, 166 F. Supp.2d at 133 (finding no ex post facto violation where statutory provision requiring that transferred military prisoners be "subject to the same discipline and treatment" as other civilian prisoners was in effect prior to the petitioner's criminal offense).

Additionally, to establish an ex post facto violation, a petitioner must show that the retroactive application of the change in the regulation creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Garner v. Jones*, 529 U.S. 244, 250 (2000). The application of the federal parole guidelines to Petitioner's case did not increase his eight-year prison sentence. Moreover, Petitioner's claim that he would have been granted early release on parole had he remained in the Department of Navy's custody is speculative. Prior to his transfer to BOP custody, Petitioner had multiple reviews for parole, which the NC&PB denied on each occasion. Petitioner has no constitutionally protected right to parole and there is no guarantee that Petitioner would have been granted parole by the NC&PB. *See Greenholtz*, 422 U.S. at 7 ("There is no constitutional or inherent right of a convicted person to be conditionally released before expiration of a valid sentence."). For these reasons, Petitioner's ex post facto claim must also be denied.

## V. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition filed pursuant to 28 U.S.C. § 2241 will be denied on the merits. An accompanying order will be entered.

DATED:  June 7, 2018

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

14